IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABANA GULF DISTRIBUTION, LTD., et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>GAP INTERNATIONAL SALES, INC., et al.<br><br>  Defendants. | No. C 06-02584 CRB<br><br>**MEMORANDUM AND ORDER RE MOTION TO DISMISS** |

This action arises out of a distribution agreement gone awry and implicates a number of state law claims for relief. Now pending before the Court is defendants' motion to dismiss all claims for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). After carefully considering the parties's memoranda, including supplemental briefing, and having had the benefit of oral argument, defendants' motion is hereby DENIED.

**BACKGROUND**

**I.    Allegations of the Complaint**[1]

Plaintiffs Gabana Gulf Distribution and Gabana Distribution (collectively "Gabana") are United Kingdom companies with worldwide principal places of business in Geneva, Switzerland. FAC ¶¶ 1-2. Defendants Gap International Sales, The Gap, Banana Republic,

---

[1] The following facts are derived from plaintiffs' First Amended Complaint ("FAC") and accepted as true for purposes of this Rule 12(b)(6) motion.

and Old Navy (collectively "Gap") are Delaware companies with worldwide principal places of business in San Francisco, California. FAC ¶¶ 3-6.

In 2003, Gap represented to Gabana that, if it could quickly find a buyer for some slow-moving excess inventory, Gap would be willing to augment their business relationship. Gabana agreed to purchase the remaining excess inventory in exchange for Gap awarding Gabana a formal agreement for Gabana to distribute Gap first-line products in Arabic-speaking countries. FAC ¶ 14. On May 13, 2003, Gabana and Gap signed two agreements: the Excess Inventory Agreement providing Gabana the right to sell the excess inventory, and the Distributor Agreement providing Gabana with distribution rights for first-line apparel products. FAC ¶¶ 15-17. In all, Gabana paid Gap $6 million for 1.7 million pieces of excess inventory, an amount in excess of its market value. FAC ¶ 18.

The Distributor Agreement required Gap's approval of any retailers Gabana may engage to sell Gap first-line products. FAC ¶ 20. Gabana began developing retailers in the Middle East and investing in this business plan. FAC ¶¶ 20-26. Gap initially approved retailers in Qatar and UAE, with sales made in Qatar in 2003 and 2004 and in UAE in the spring of 2004. FAC ¶ 20. In July 2003, Gap authorized Gabana to place orders for first-line products for retailers in Bahrain, Qatar, Kuwait, Dubai and Saudi Arabia.[2] FAC ¶ 22. Then, "almost immediately" after the initial Qatar and UAE locations were established, but at a date not specified in the FAC, Gap began to stall and delay approvals. FAC ¶ 23. At some unspecified date during the first contract period, Gap asked Gabana to develop and screen retailers in countries outside of the Distributor Agreement, but Gap also declined to approve these proposals. FAC ¶ 26. In addition, Gap approved at least one retailer in Switzerland under one of the contracts at an unspecified time. FAC ¶ 36.

On September 1, 2004, Gap and Gabana renewed the Distributor Agreement with identical terms and an expiration date of August 31, 2007. FAC ¶ 27. Gap represented to Gabana that the renewed contract was an "additional step toward cementing a long-term and

---

[2] It is not clear from the FAC if Gap had approved retailers in these countries by this time or at a later date.

2

mutually beneficial relationship." Id.  That same month, Gabana submitted proposals for retailers in Saudi Arabia, Lebanon and Jordan, but again Gap did not approve the proposals. FAC ¶¶ 28-29.  At some unspecified time, Gabana expressed concern to Gap over the delays, and Gap encouraged Gabana to invite a retailer to San Francisco to place an order under the New Distributor Agreement; however, Gap subsequently refused to fill this order.  FAC ¶ 30.

Four months after the renewal of the contract, Gap informed Gabana that relations with distributors including Gabana would be transferred to a different division with a new executive and that Gap was revising its international strategy.  FAC ¶¶ 31-32.  Gabana arranged for the new executive to visit retailers it worked with in the Middle East.  FAC ¶ 31. From February through May 2005, the executive attempted unsuccessfully to declare Gabana in breach of the New Distributor Agreement "many times" by claiming incorrectly that Gabana sold inventory to an unauthorized retailer and transferred distribution rights to a retailer.  FAC ¶ 33.

On May 12, 2005, just seven months into the three-year contract and one day after Gabana placed an order for merchandise at Gap's urging, Gap informed Gabana of its intention to terminate the New Distributor Agreement effective August 10, 2005.  FAC ¶ 34. On July 28, 2005, Gap notified Gabana that it must complete all sales of Gap merchandise within 180 days, or by February 6, 2006, pursuant to the renewed Distributor Agreement. FAC ¶ 34.  Around June or July 2005, Gap executives met with several Gabana retailers in the Middle East without the presence of Gabana.  FAC ¶ 35.  Around this time, though on dates unknown, at least two retailers placed orders in excess of $1.4 million for Gap first-line merchandise directly with Gap and not through Gabana.  Id.

In reliance on the New Distributor Agreement, Gabana entered into agreements with retailers Gap approved to distribute Gap first-line merchandise.  FAC ¶ 36.  After Gap terminated the New Distributor Agreement, Gabana could not fulfill its contractual obligations with these retailers.  Id.

//

//

## II.   Agreements

The three agreements between Gap and Gabana–the Excise Inventory Agreement, the Distributor Agreement, and the identical New Distributor Agreement ("NDA")–are properly attached to the FAC and may be considered by the Court in deciding this motion. Both Distributor Agreements contain the following relevant sections:

> ¶ 1(d) Prior to offering any Authorized Goods for sale to any third party, Distributor shall apply for and obtain [Gap's] written approval of each of its customers and each retail store location where Authorized Goods will be sold by each customer. [...] [Gap] shall have the right, in its sole discretion, to approve, disapprove, or cancel at any time any Distributor customer and any retail store where any of Distributor's customers propose to sell or have sold Authorized Goods. [...]
>
> ¶ 9(d) This Agreement may be terminated by any party without cause for any reason upon ninety (90) days' prior written notice to the other party to this Agreement. [Gap] may terminate this Agreement immediately upon written notice in the event Distributor's behavior causes actual and/or potential damage to [Gap's] reputation.
>
> ¶ 11(a) Choice of Law and Venue. This Agreement will be governed by and construed in accordance with the laws of the United States and the State of California as applied to agreements entered into and to be performed entirely within California between California residents. [...]
>
> ¶ 11(g) Relationship of the Parties. Distributor is an independent contractor. There is no relationship of agency, partnership, joint venture, employment, or franchise between [Gap] and Distributor. [...]

## III.   Procedural History

In April 2006, Gabana filed this lawsuit in federal court pursuant to the Court's diversity jurisdiction. The FAC states seven claims for relief: 1) breach of contract, 2) breach of implied covenant of good faith and fair dealing, 3) interference with prospective economic advantage, 4) fraud, 5) unlawful and unfair business acts or practices, 6) quasi-contract/quantum meruit, 7) declaratory relief.

Defendants bring this motion to dismiss the first five claims for relief for failure to state a claim upon which relief can be granted. Defendants further allege plaintiffs fail to plead fraud with the particularity required by Rule 9(b). Defendants also move to dismiss the quasi-contract claim on the ground it is insufficiently pled. Finally, defendants move to dismiss the declaratory relief claims on the ground that they are duplicative of other claims.

//

4

# DISCUSSION

## I. Legal Standards

### A. Rule 12(b)(6)

The motion to dismiss for failure to state a claim is viewed with disfavor. Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997). All factual allegations set forth in the complaint are taken as true and construed in the light most favorable to the plaintiff. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotations omitted). A complaint should not be dismissed on these grounds unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Parks Sch. of Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).

A court may consider certain materials, including documents attached to the complaint, without converting the motion to dismiss into a motion for summary judgment. United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). Documents attached to the pleadings are "properly a part of the court's review as to whether plaintiff can prove any set of facts in support of its claim" on a motion to dismiss for failure to state a claim. Amfac Mortgage. Corp. v. Arizona Mall of Tempe, Inc., 583 F.2d 426, 429-30 (9th Cir. 1978).

### B. California Franchise Relations Act

The California Franchise Relations Act ("CFRA"), Cal. Bus. & Prof. Code §§ 20001 et seq., provides in relevant part:

> § 20001. Franchise
>
> As used in this chapter, "franchise" means a contract or agreement, either expressed or implied, whether oral or written, between two or more persons by which:
>
> (a) A franchisee is granted the right to engage in the business of offering, selling or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor; and
>
> (b) The operation of the franchisee's business pursuant to that plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate; and
>
> (c) The franchisee is required to pay, directly or indirectly, a franchise fee.
>
> (d) "Franchise" does not include any of the following: [...]

> § 20010. Waiver
>
> Any condition, stipulation or provision purporting to bind any person to waive compliance with any provision of this law is contrary to public policy and void.
>
> § 20015. Domicile or operation in state
>
> The provisions of this chapter apply to any franchise where either the franchisee is domiciled in this state or the franchised business is or has been operated in this state.
>
> § 20020. Grounds for termination prior to expiration of term; good cause
>
> Except as otherwise provided by this chapter, no franchisor may terminate a franchise prior to the expiration of its term, except for good cause. Good cause shall include, but not be limited to, the failure of the franchisee to comply with any lawful requirement of the franchise agreement after being given notice thereof and a reasonable opportunity, which in no event need be more than 30 days, to cure the failure.

## II.   The Breach of Contract Claim Under the California Franchise Relations Act

Plaintiffs first of three theories under their breach of contract claim contends that ¶ 9(d) of the NDA violates the California Franchise Relations Act, which prohibits a franchisee to be terminated without cause and voids any stipulation to the contrary. See Cal. Bus. & Prof. Code §§ 20010, 20020. Defendants argue that plaintiffs do not satisfy the jurisdictional requirements of the CFRA, which restricts its application to "any franchise where either the franchisee is domiciled in this state or the franchised business is or has been operated in this state." See Cal. Bus. & Prof. Code § 20015. As plaintiffs are not domiciled in California and there is no allegation that the franchised business operated in California, defendants argue that the CFRA does not apply here and the alleged termination without cause was therefore properly executed pursuant to the terms of the contract. Furthermore, defendants contend that even if the CFRA does apply, the NDA explicitly provides that it does not create a franchise agreement and therefore is not circumscribed by the provisions of the CFRA.

### A.   Does the CFRA Apply?

There is no dispute that California substantive law applies to this dispute. See NDA ¶ 11(a). Yet in applying California law, the Court must determine whether specific statutory requirements of the CFRA permit its application, as well.

In interpreting the application of the CFRA to out-of-state franchises, courts have consistently held that a simple choice of law clause is not sufficient to warrant such

6

application. See <u>Premier Wine & Spirits of South Dakota, Inc. v. E. & J. Gallo Winery</u>, 644 F. Supp. 1431, 1436, 1439 (E.D. Cal. 1986), *aff'd* 846 F.2d 537 (9th Cir. 1988) (holding that the CFRA does not apply to a plaintiff distributor that is not domiciled in California and has never operated in California pursuant to a California choice of law provision); <u>Gilchrist Mach. Co. v. Kotamatsu Am. Corp.</u>, 601 F. Supp. 1192, 1201 (S.D. Miss. 1984) (same); <u>Bunch v. Artec Intern Corp.</u>, 559 F. Supp. 961, 968 n.14 (D.C.N.Y 1983) (same). See also <u>Gravquick A/S v. Trimble Navigation Intern. Ltd.</u>, 323 F.3d 1219, 1223 (9th Cir. 2003) (finding that a choice of law provision in which the parties stipulate that the law of one state should apply is not sufficient to overcome geographical limitations on its application).

. There is no dispute that Gabana is not a resident or domiciliary of California and that it has never operated its business in California. Like the cases cited above, if the parties merely agreed that California law would apply, without more, then the CFRA would not apply to this Agreement. Yet there is an additional element to the choice-of-law provision here that requires the Court to decide an apparent matter of first impression. The choice of law provision in the Agreement does not merely choose California law to govern; rather, it chooses California law "as applied to agreements entered into and to be performed entirely within California between California residents." NDA, ¶ 11(a). In other words, if the plain language of the contract is given effect, it stipulates that Gabana shall be treated as a California resident and that the contract shall effectively be deemed to have been entered into within California. As a California resident under the NDA, Gabana then satisfies the plain language of the jurisdiction limitation of the CFRA.

Defendant has pointed to no authority, nor can the Court find one, that would prevent the parties from stipulating that Gabana should be treated as a California resident. There is no further limitation on the stipulation–such as for purposes of personal jurisdiction or service of process–that would counsel the Court against enforcing it under the CFRA. Under California law, there is a "strong policy favoring enforcement" of arms-length contractual choice-of-law provisions, unless the law is contrary to a fundamental policy of California. <u>Nedlloyd Lines B.V. v. Superior Court</u>, 3 Cal. 4th 459, 464-465, 466 (1992) (noting that

7

California courts have adopted the principles set forth in section 187 of the Restatement Second of Conflict of Laws). Without an express limitation on the application of the plain language of the choice-of-law provision of the NDA, Gabana should be treated as a California resident.

Furthermore, there is no fundamental policy with which such an interpretation of the choice-of-law clause would conflict. The motivating purpose behind the CFRA was to protect franchisees, not franchisors, from contracts of adhesion and abrupt terminations without cause. See JRS Prods., Inc. v. Matsushita Elec. Corp. of America, 115 Cal. 4th 168, 174 (2004); see also 62B Am Jur 2d Private Franchise Contracts § 1 ("Many states now have franchise statutes... enacted in large part to counteract the unequal bargaining power between the franchisor and franchisee, which would allow a franchisor to leverage its bargaining strength so as to insert provisions in its private agreements with franchisees that would allow it to sever the franchise relationship at will."). Where, as here, the plain reading of the choice-of-law clause would further protect the out-of-state franchisee in a dispute with a California franchisor in a court located in California interpreting California law, no fundamental policy exists to further protect such a franchisor. The Court therefore finds that the choice-of-law clause shall be enforced as written and Gabana shall be treated as a California resident under the NDA.

As a California resident, Gabana therefore facially satisfies the threshold jurisdictional requirements of the CFRA. See Cal. Bus. & Prof. Code § 20015. Yet Gap urges the Court to decipher an "express geographic limitation" in section 20015 that would prevent the parties from agreeing to treat Gabana as a California resident for purposes of an analysis under the provisions of the CFRA. The Court, however, finds no support for this argument in the plain language of the provision.[3] Section 20015 reads: "The provisions of this chapter apply to any franchise where either the franchisee is domiciled in this state or the franchised business is or

---

[3]Because the plain language of section 20015 is clear, the Court need not consider the legislative history of the CFRA. See Kavanaugh v. West Sonoma County Union High Sch. Dist., 29 Cal. 4th 911, 919 (2003). The parties' requests for judicial notice of excerpts of the legislative history are therefore denied.

8

has been operated in this state." First, it is evident that this provision is not intended to protect in-state franchises only. The provision could have, but does not, expressly state such a limitation, even by merely adding a word such as "only" or "solely." Moreover, businesses which have operated in the state are also included within this provision, even if they are not California domiciliaries or residents.[4] Therefore, any argument to limit the intent of this provision to California-based franchises is misguided. Without further support for the argument that the parties cannot stipulate to such a choice-of-law clause, the Court finds no reason to interpret the choice-of-law provision contrary to its plain meaning.

The Ninth Circuit has applied this analysis in a similar situation. Schwartz v. Pillsbury, 969 F.2d 840 (9th Cir. 1992). There, the issue before the court was a provision of the New York Franchise Sales Act, which applied when a person offers to sell or sells a franchise in New York. The relevant part of the choice of law provision stated as follows:

> It is mutually understood and agreed that this Franchise *shall be deemed to have been made in the State of New York, County of Bronx,* and that any and all performance thereunder, or breach thereof shall be interpreted, governed and construed pursuant to the laws of the State of New York, and that the parties consent that New York State shall be a forum where any cause of action arising under this franchise may be instituted.

Id. (emphasis added by the court).

The court noted at the outset that the parties would ordinarily not satisfy the requirements franchise act provision. However, the court found that the parties unambiguously "deemed" the agreement to have been made in New York and therefore satisfied the requirements of the statute. Furthermore, the court noted that the defendant, who argued against the application of the New York statute, was a New York corporation and the franchisor. As the party drawing the contract, it would be "disingenuous" to argue that this provision does not mean "what it plainly says." Id. Similarly, here, defendant franchisor is presumed to have greater leverage such that it cannot persuasively argue that it

---

[4] Both parties agree that section 20010 of the California Business and Professional Code does not affect the analysis under section 20015, though for different reasons. Because section 20015 does not create a right or requirement that warrants "compliance," the Court agrees that section 20010 is not applicable to this inquiry.

did not know to what it was agreeing in the NDA. Because there is no reason, stemming from either the plain language of the contract and the statute or the public policy considerations underlying this analysis, that the parties' stipulation to treating Gabana as a California resident does not satisfy the conditions of jurisdictional provision of the CFRA, the Court finds that, without further evidence to the contrary, the CFRA applies to this dispute.

### B. Application of the CFRA

Nevertheless, Gap argues that Gabana does not qualify as a franchise under the CFRA because the contract expressly states that no franchise relationship is created by the Agreement. See NDA, ¶ 11(g). It is well-settled, however, that the CFRA does not permit stipulations that waive the requirements of the statute. See Cal. Bus. & Prof. Code § 20010 ("Any condition, stipulation or provision purporting to bind any person to waive compliance with any provision of this law is contrary to public policy and void."); see also Boat & Motor Mart v. Sea Ray Boats, 825 F.2d 1285, 1288 (9th Cir. 1987) (finding § 20001 controlled the determination of whether a relationship constituted a franchise); Adees Corp. v. Avis Rent a Car Sys., 2003 U.S. Dist. LEXIS 26293, *3-4 (C.D. Cal. 2003) ("A franchise need not be explicitly defined as such [under the FRA]. Rather, what constitutes a franchise is determined by the Act's three-part definition [in § 20001].").

As defined in the CFRA, the statute applies to any contract or agreement, express or implied, in which the purported franchisee meets three criteria. See Cal. Bus. & Prof. Code § 20001. Plaintiffs allege that the three criteria are met, and defendants do not dispute this at this time. Accordingly, the Court finds that Gabana satisfies both the jurisdictional and substantive requirements of the CFRA; therefore, the CFRA applies to this Agreement.

### CONCLUSION

For the reasons set forth above, the Court finds the CFRA applies to the NDA. Because the First Amended Complaint alleges that the NDA was terminated without cause, which is prohibited by the CFRA, Gabana has successfully stated a claim upon which relief can be granted. Accordingly, the motion to dismiss on this ground is DENIED.

The Court further finds that declaratory relief may be necessary to determine plaintiffs' existing and ongoing rights if the Agreement was not terminated properly. Accordingly, the motion to dismiss on that ground is also DENIED.

Finally, the remaining claims require further factual development before the Court can make a determination as a matter of law. Notably, the Court finds that the fraud claim was pled with sufficient particularity to satisfy Rule 9(b). Thus, the motion to dismiss on all other grounds is also DENIED.

**IT IS SO ORDERED.**

Dated: August 14, 2006

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE